**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| | * | |
| TRUSTEES OF THE OPERATING | * | |
| ENGINEERS TRUST FUND, et al. | | |
| | * | |
| Plaintiffs, | | |
| | * | |
| v. | | Case No. ELH-11-2646 |
| | * | |
| GDS EQUIPMENT RENTAL, INC. | | |
| | * | |
| Defendant. | | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## REPORT AND RECOMMENDATION

The above-referenced case was referred to the undersigned for review of plaintiffs'

motion for default judgment and to make recommendations concerning damages, pursuant to 28

U.S.C. § 301 and Local Rule 301.6.  (ECF No. 8.)  Currently pending is plaintiffs' Amended

Motion for Entry of Default Judgment ("Amended Motion") (ECF No. 22, Ex. C.)  No hearing is

deemed necessary.  See Fed. R. Civ. P. 55(b)(2); Loc. R. 105.6.  For the reasons discussed

herein, I respectfully recommend that plaintiffs' motion (ECF No. 22, Ex. C) be GRANTED IN

PART and DENIED IN PART and that relief be awarded as set forth herein.

## I.   BACKGROUND

The trustees of the Operating Engineers Local 77 Trust Fund of Washington, D.C. ("Welfare

Fund"), [1] trustees of the Operating Engineers Local 77 Pension Trust Fund ("Pension Fund"), [2]

---

[1] The trustees for the Welfare Fund are the following plaintiffs:  Charles T. Lemmon ("Mr. Lemmon"), Josh VanDyke ("Mr. VanDyke"), Thomas Johnson ("Mr. Johnson"), Thomas Nolan ("Mr. Nolan"), James Forsythe ("Mr. Forsythe"), Lewis F. Hanbury, Jr. ("Mr. Hanbury"), Richard Windham ("Mr. Windham"), and Steve Beach ("Mr. Beach").  (Compl., ECF No. 1 ¶ 1.)

trustees of the Operating Engineers Local 77 Joint Apprenticeship and Training and Skill Improvement Trust Fund ("Apprenticeship Fund"),[3] trustees of the Operating Engineers Local 77 Individual Account Plan ("Individual Account Fund"),[4] and Mr. VanDyke, in his capacity as collection agent for the International Union of Operating Engineers Local No. 77 (collectively, "plaintiffs") brought this suit against GDS Equipment Rental, Inc. ("defendant") for failure to pay contributions to multi-employer plans in violation of § 185 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 141, et seq., and violations of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001, et seq. (ECF No. 1.)

The Welfare Fund, Pension Fund, Apprenticeship Fund, and Individual Account Fund (collectively, "funds") are trust funds established and maintained as a result of collective bargaining pursuant to section 302(c)(5), (6) of the LMRA. 29 U.S.C. § 186(c)(5), (6); (Id. ¶ 2). The funds are administered in the State of Maryland. (ECF No. 1 ¶ 3.) The plans of which the funds are part ("plans") are "multiemployer plans" within the meaning of section 3(37) of ERISA. 29 U.S.C. § 1002(37); (Id. ¶ 4). The trustees of the funds are "fiduciaries" of the plans within the meaning of section 3(21) of ERISA. 29 U.S.C. § 1002(21); (Id. ¶ 5).

Defendant is a Maryland corporation and is a party to a collective bargaining agreement ("CBA") with the International Union of Operating Engineers Local No. 77 ("Union"), whose

---

[2] The trustees for the Pension Fund are the following plaintiffs: Mr. Lemmon, Mr. VanDyke, Mr. Johnson, Mr. Nolan, Mr. Forsythe, Mr. Hanbury, Mr. Windham, and Mr. Beach. (Id. ¶ 1.)

[3] The trustees for the Apprenticeship Fund are the following plaintiffs: Mr. VanDyke, Mr. Forsythe, Mr. Beach, Mr. Lemmon, Thomas N. Baldwin ("Mr. Baldwin"), Michael Scott ("Mr. Scott"), and Mr. Hanbury. (Id. ¶ 1.)

[4] The trustees for the Individual Account Fund are the following plaintiffs: Mr. Hanbury, Steve Fallin, Mr. Forsythe, Mr. VanDyke, Mr. Lemmon, Richard A. Mazzella, Mr. Scott, and Chip Wood. (Id. ¶ 1.)

members it employs.  (ECF No. 1 ¶¶ 6, 10); (CBA, ECF No. 14, Ex. D).  The CBA binds

defendant to the terms and conditions of the Agreements and Declarations of Trust ("Trust

Agreements") establishing the funds.  (ECF No. 1 ¶ 11); (ECF No. 14, Ex. D, Art. X).  Under the

terms of the CBA and Trust Agreements, defendant must file timely contribution reports and

make timely contributions to each of the funds for time worked by, or paid to, Union Workers.

(ECF No. 1 ¶ 12); (ECF No. 14, Ex. D., Arts. X-XIV).  The terms of the CBA also provide that

defendant must make payment for dues of Union members.  (ECF No. 1 ¶ 12); (ECF No. 14, Ex.

D, Art. III).  If defendant fails to comply with the CBA, defendant must pay actual damages in

the amount of the delinquency, and in addition, liquidated damages, interest, and attorneys' fees

and costs.  (ECF No. 1 ¶ 12); (ECF No. 14, Ex. D, Art. XIV).

Plaintiffs' Complaint alleges that defendant "has failed to make contributions and/or

failed to submit [contribution] reports to the funds based on work performed from April 2010

through the date of this Complaint as required under the CBA" and that defendant owes

contributions, liquidated damages, interest "for these periods."  (ECF No. 1 ¶ 13.)  Plaintiffs also

allege that "defendant also owes liquidated damages and interest on untimely contributions for

work performed from June 2008 through March 2010."  (Id.)  Plaintiffs claim that they have

demanded that defendant pay the amounts due to the funds, but that defendant has failed to pay

and refuses to pay the amounts due.  (Id. ¶ 14.)   As a result of defendant's failure to pay,

plaintiffs contend that they are unable to provide maximum benefits to the funds' participants

and beneficiaries and may suffer irreparable harm.  (Id. ¶ 18.)

Accordingly, the trustees of the funds demand judgment:  (A) in the full amount of

unpaid contributions, liquidated damages, and interest due; or (B) in the full amount that

becomes due as a result of an audit performed prior to the entry of judgment.  (Id. ¶ 15.)  The

Union seeks to recover the full amount of union dues as either the full amounts due or the full

amounts that become due as a result of an audit.  (Id.)  Plaintiffs collectively also seek attorneys'

fees and costs.  (Id.)  Finally, plaintiffs seek an injunction that orders defendant to:  (1) provide

plaintiffs with a "full and complete accounting of all amounts due to plaintiffs from defendant;"

(2) permanently comply with their contribution and reporting requirements under the CBA and

Trust Agreements; and (3) pay all delinquent contributions, interest, liquidated damages, audit

fees, and attorneys' fees due to plaintiffs.  (Id. ¶ 19.)

Defendant was served with a Summons and copy of plaintiffs' Complaint on September

23, 2011, as indicated by the return of service filed with the court on September 28, 2011.  (ECF

Nos. 2, 3.)  After defendant failed to file an Answer or otherwise defend, plaintiffs filed a

Request for Entry of Default, which the Clerk granted on October 20, 2011.  (ECF Nos. 4, 5.)

On October 24, 2011, plaintiffs filed a Motion for Entry of Default Judgment ("Motion").  (ECF

No. 7.)  In support thereof, plaintiffs submitted the affidavit of their funds' third-party

administrator, Wendy Chambers ("Ms. Chambers"), employed at Associated Administrators,

LLC (Id., Ex. A), and the affidavit of Eric Jason Wexler, Esquire ("Mr. Wexler"), an attorney

with the law firm retained by plaintiffs.  (Id., Ex. B.)

On November 14, 2011, Judge Hollander referred plaintiffs' Motion to the undersigned to

review and to make recommendations concerning damages.  (ECF No. 8.)  Because the

undersigned was unable to make a determination as to an appropriate award of damages based

upon the evidence submitted by plaintiffs, the undersigned directed plaintiffs to submit

supplemental evidentiary support for their Motion by February 13, 2012.  (ECF No. 10.)  After

the undersigned granted plaintiffs' motion for extension of time (ECF No. 12), plaintiffs filed

their Supplemental Evidentiary Support for Motion for Entry of Default Judgment ("First

Supplement") on February 26, 2012.  (ECF No. 14.)  In support of their First Supplement,

plaintiffs submitted:  the second affidavit and addendum of Ms. Chambers (Id., Ex. A);

defendant's monthly contribution reports (Id., Ex. B); tables which plaintiffs created to

summarize their calculations of the amounts that defendant owes each fund (Id., Ex. C)

("delinquency summaries"); and the "Excavation Agreement," or CBA, entered into by

defendant and the Union.  (Id., Ex. D.)  The undersigned concluded that plaintiffs' First

Supplement did not provide sufficient evidence for the undersigned to determine an appropriate

award of damages and directed plaintiffs to provide further evidentiary support for their Motion

by April 6, 2012.  (ECF No. 16.)  When plaintiffs failed to file their supplement within the

deadline, which the undersigned had extended upon plaintiffs' motion, the undersigned directed

plaintiffs to do so by April 18, 2012.  (ECF No. 19.)   Thereafter, plaintiffs filed their

Supplemental Evidentiary Support for Motion for Entry of Default Judgment ("Second

Supplement").  (ECF No. 22.)  In support of their Second Supplement, plaintiffs submitted the

affidavit of the Union's business manager, Mr. VanDyke (Id., Ex. A), as well as the third

affidavit of Ms. Chambers.  (Id., Ex. B.)  Plaintiffs also attached their Amended Motion to their

Second Supplement.  (Id., Ex. C.)

## II.  <u>STANDARD FOR ENTRY OF DEFAULT JUDGMENT</u>

In reviewing a motion for default judgment, the court accepts as true the well-pleaded

factual allegations in the complaint as to liability.  <u>Ryan v. Homecomings Fin. Network</u>, 253

F.3d 778, 780-81 (4th Cir. 2001).  It remains for the court, however, to determine whether these

unchallenged factual allegations constitute a legitimate cause of action.  <u>Id.</u>; <u>see also</u> 10A

Wright, Miller & Kane, <u>Federal Practice and Procedure</u> § 2688 (3d ed. Supp. 2010) ("[L]iability

is not deemed established simply because of the default . . . and the court, in its discretion, may

require some proof of the facts that must be established in order to determine liability.").

If the court determines that liability is established, the court must then determine the appropriate amount of damages. <u>Ryan</u>, 253 F.3d at 780-81. The court does not accept factual allegations regarding damages as true, but rather must make an independent determination regarding such allegations. E.g., <u>Credit Lyonnais Secs. (USA), Inc. v. Alcantara</u>, 183 F.3d 151, 154 (2d Cir. 1999). In so doing, the court may conduct an evidentiary hearing. Fed. R. Civ. P. 55(b)(2). The court may also make a determination of damages without a hearing, so long as there is an adequate evidentiary basis in the record for the award. <u>See, e.g.</u>, <u>Stephenson v. El-Batrawi</u>, 524 F.3d 907, 917 n.11 (8th Cir. 2008) ("Foregoing an evidentiary hearing may constitute an abuse of discretion when the existing record is insufficient to make the necessary findings in support of a default judgment."); <u>Adkins v. Teseo</u>, 180 F. Supp. 2d 15, 17 (D.D.C. 2001) (court need not make determination of damages following entry of default through hearing, but rather may rely on detailed affidavits or documentary evidence to determine the appropriate sum).

In sum, the court must (1) determine whether the unchallenged facts in plaintiffs' Complaint constitute a legitimate cause of action, and, if they do, (2) make an independent determination regarding the appropriate amount of damages.

## III.  **DISCUSSION**

### A.  **Defendant's Liability**

Plaintiffs bring this suit to "enforce their rights arising out of defendant's violation of the CBA" under both ERISA and the LMRA. (ECF No. 1 ¶ 8.) Plaintiffs seek relief pursuant to sections 502 and 515 of ERISA, 29 U.S.C. §§ 1132, 1145. (Id.) Section 515 of ERISA obligates employers subject to a multi-employer plan or collective bargaining agreement to make

contributions in accordance with the terms of the plan or agreement; section 502 authorizes

parties to a CBA or plan to enforce their terms.  29 U.S.C. §§ 1132, 1145.  As discussed further

herein, the well-pled allegations in plaintiffs' Complaint establish that defendant was bound by

the terms of the CBA and that defendant breached the CBA by failing:  (1) to pay contributions

for covered work during the months of April 2010 through September 2010;[5] (2) to timely pay

contributions due to the funds for work performed during the months of January 2008 through

March 2010;[6] and (3) to make payment for dues of Union members.  (ECF No. 1 ¶ 13).

Therefore, plaintiffs have proven defendant's liability for breach of the CBA, and that

defendant's breach constitutes a violation of § 515 of ERISA.

　　　　Plaintiffs also seek relief pursuant to section 301 of the LMRA, 29 U.S.C. § 185.  (Id. ¶

8.)  The LMRA confers jurisdiction on United States district courts to hear suits alleging

violations of a contract "between an employer and a labor organization representing employees

in an industry affecting commerce."  29 U.S.C. § 185(a).  The LMRA also authorizes plaintiffs,

as trustees of the funds, to bring such an action to enforce the terms of the CBA and to seek

remedies for its breach.  Id.; Int'l Painters & Allied Trades Indus. Pension Fund, et al. v. H.C.

---

[5] In their Complaint, filed on September 15, 2011, plaintiffs also allege that defendant breached the CBA because it did not file contribution reports for the months of April 2010 through September 2010.  (ECF No. 1 ¶ 13.)  In their Second Supplement, however, plaintiffs state that defendant submitted its contribution reports for these months on October 19, 2011. (ECF No. 22 at 2.)  Accordingly, the undersigned finds that defendant did not breach the terms of the CBA by failing to file contribution reports.

[6] Plaintiffs' Complaint apparently misstates one of the time periods for which they allege defendant incurred liability.  In their Complaint, plaintiffs allege that "defendant owes liquidated damages and interest on untimely contributions for work performed from June 2008 through March 2010" (ECF No. 1 ¶ 13 (emphasis added)), whereas plaintiffs' Amended Motion, as well as the second affidavit of Ms. Chambers, states that defendant owes liquidated damages and interest to the funds because defendant failed to pay contributions in a timely manner for work performed "during various months of January 2008 through March 2010."  (ECF No. 14, Ex. A ¶ 4 (emphasis added)); (ECF No. 22, Ex. C ¶ 2).

Ackerman & Son, Inc., 2012 WL 251963, at *2 (D. Md. Jan. 24, 2012) (finding plaintiffs,

benefit trust fund and trustee, as intended third party beneficiaries of a CBA, had standing to sue

under 29 U.S.C. § 185(a)).  As discussed above, plaintiffs have proven defendant's liability for a

breach of the CBA.  Accordingly, in addition to seeking remedies under ERISA, plaintiffs may

enforce the terms of the CBA under the LMRA.  See Hudson Cnty. Carpenters Local Union No.

6 v. V.S.R. Constr. Corp., 127 F. Supp. 2d 565, 568 (D. N.J. 2000) ("It is well-established that a

failure to make contributions to a union trust fund as required by a [CBA] constitutes a violation

of ERISA § 515 and a violation of LMRA § 301.").

Accordingly, I conclude that plaintiffs are entitled to relief on their claims brought

pursuant to ERISA and the LMRA.

## B. **Damages**

Having determined that plaintiffs have proven liability, the undersigned now undertakes

an independent determination of the damages to which they are entitled.  Pursuant to ERISA and

the terms of the CBA and the Trust Agreements, plaintiffs seek to recover a total sum of the

$119,287.82 from defendant.[7]   (ECF No. 22, Ex. C.)  This requested sum includes damages

---

[7] The CBA provides for the following mandatory remedies as to unpaid contributions:

(A) recovery of the unpaid contributions;
(B) interest on unpaid contributions (at a rate of eight percent (8%) per annum);
(C) liquidated damages equal to 20 percent of the unpaid contributions for the first month
    for which the contribution is delinquent; and
(D) "reasonable and actual" attorney fees.

(ECF No. 14, Ex. D, Art. XIV.)  The undersigned notes that, as to the assessment of liquidated
damages and interest, the terms of the CBA are inconsistent with plaintiffs' Complaint, which
alleges that, pursuant to the terms of the CBA and Trust Agreements, if contributions are paid
after the due date, defendant must:

[P]ay to the Funds interest at the rate of 2% for the first 15 days of the delinquency, 2%
for the next 15 days, and 2% per month or portion of a month thereafter, calculated from

against defendant in the amount of $116,244.92,[8] segregated as follows:  (1) unpaid contributions

totaling $32,106.36; (2) liquidated damages totaling $78,591.69; and (3) interest in the amount of

$5,546.87.  (Id.)  To prove their damages, plaintiffs submit:  (1) plaintiffs' First Supplement

(ECF No. 14); (2) plaintiffs' Second Supplement (ECF No. 22); (3) the CBA entered into by

defendant and the Union (ECF No. 14, Ex. D); (4) defendant's monthly contribution reports (Id.,

Ex. B); (5) the delinquency summaries prepared by plaintiffs (Id., Ex. C); (6) three affidavits of

Ms. Chambers, as well as an addendum thereto (ECF No. 7, Ex. A & Add.); (ECF No. 14, Ex.

A); (ECF No. 22, Ex. B); (7) the affidavit of Mr. Wexler (ECF No. 7, Ex. B); and (8) the

---

the due date through the date of payment, and pay liquidated damages in an amount equal
to the greater of 20% of the contributions owed, or $50.00.

(ECF No. 1 ¶ 12.)  Plaintiffs did not submit a copy of the Trust Agreements.

ERISA provides for the following mandatory remedies as to unpaid contributions in
violation of § 515 of ERISA:

(A) recovery of the unpaid contributions;
(B) interest on unpaid contributions (at rate for underpayment of federal income taxes
     under IRC 6621);
(C) liquidated damages equal to the greater of
     i.  interest on unpaid contributions, or
     ii.  20 percent of the unpaid contributions
(D) reasonable attorney's fees and costs of the action; and
(E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2).

   [8] Plaintiffs' Motion seeks damages in the amount of $128,502.33, (ECF No. 7), and
Plaintiffs' Amended Motion seeks $116,244.92 in damages.  (ECF No. 22, Ex. C.)  To explain
this discrepancy, Ms. Chambers states that it was previously believed that defendant performed
work during October 2010, but plaintiffs were later made aware that defendant had ceased
performing covered work during the month of September 2010.  (ECF No. 14, Ex. A ¶ 3.)
Thereafter, plaintiffs recalculated the amounts owed by defendant, which totaled $116,244.92.
(Id. ¶ 9.)  Ms. Chambers contends that these amounts are supported by "GDS delinquency
summaries and contributions reports submitted by GDS."  (Id. ¶ 10.)  Plaintiffs state that they
filed their Amended Motion to "conform to the evidence," as their Amended Motion seeks
damages in the amount of this lower figure:  $116,244.92.  (ECF No. 22 at 4, Ex. C.)

affidavit of Mr. VanDyke.  (ECF No. 22, Ex. A.)

### 1. __Unpaid Contributions__

Plaintiffs seek to recover unpaid contributions totaling $32,106.36.  (ECF No. 22, Ex. C ¶ 4.)  In her third affidavit, Ms. Chambers states that defendant submitted contribution reports for work performed during the months of April 2010 through September 2010 but that defendant has not paid contributions for work performed during those months.  (Id., Ex. B ¶ 6.)  In her second affidavit, Ms. Chambers sets forth the individual amounts of contributions due to each fund.  (ECF No. 14, Ex. A ¶ 5.)  In support of her testimony, Ms. Chambers attaches defendant's contribution reports for the months of April 2010 through September 2010, as well as tables that list the contribution amount due to each fund for those same months ("delinquency summaries").  (Id., Exs. B, C.)  Mr. Wexler and Ms. Chambers state that plaintiffs used defendant's contribution reports to generate the delinquency summaries.  (ECF No. 14 ¶ 5 & Ex. A, Add. ¶ 4.)  The delinquency summaries reflect that the amounts of unpaid contributions for the months of April 2010 through September 2010 are as follows: [9]

---

[9] The undersigned notes that the contribution reports reflect contribution amounts due for the months of April 2010 through September 2010 that exceed the amounts listed in the delinquency summaries.  (ECF No. 14, Exs. B, C.)  It appears, although plaintiffs do not make clear, that defendant made partial contributions for work performed during this time frame.

**Unpaid Contributions**[10]

| Month | Welfare Fund | Pension Fund | Apprenticeship Fund | Individual Account Fund | Dues Fund |
|---|---|---|---|---|---|
| April 2010 | X | $1,036.98 | X | X | $290.34 |
| May 2010 | X | $3,208.00 | X | X | $834.08 |
| June 2010 | X | $4,653.00 | X | X | $1,209.78 |
| July 2010 | X | $3,830.00 | $30.09 | X | $995.80 |
| August 2010 | X | $4,759.00 | $523.49 | X | $1,237.34 |
| September 2010 | $5,820.01 | $2,685.00 | $295.35 | X | $698.10 |
| **TOTAL** | **$5,820.01** | **$20,171.98** | **$848.93** | **X** | **$5,265.44** |
| **TOTAL FOR ALL FUNDS** | **$32,106.36** | | | | |

I have verified that the sum of the unpaid contributions, as listed in the delinquency summaries, is $32,106.36.  (ECF No. 14, Ex. C pp. 5-6.)

In sum, I have reviewed the affidavits and documents submitted and find that plaintiffs have presented sufficient evidence to establish the amount of unpaid contributions that they are entitled to collect.  Accordingly, I recommend granting plaintiffs' request to recover damages for unpaid contributions in the amount of $32,106.36.

### 2.  Liquidated Damages

Plaintiffs seek to recover a total sum of $78,591.69 in liquidated damages from defendant assessed for unpaid and untimely contributions during the months of January 2008 through September 2010.  (ECF No. 22, Ex. C ¶¶ 3, 5.)  To support their request, plaintiffs rely on the

---

[10] The table indicates the months for which plaintiffs did not list a delinquent contribution amount with an "X" symbol.

second and third affidavits of Ms. Chambers and the delinquency summaries.  (ECF No. 22 at 3 & Ex. C ¶ 5.)  Although plaintiffs do not bifurcate the amount of damages they request, the undersigned will first address plaintiffs' request for liquidated damages as to unpaid contributions and then will address plaintiffs' request for liquidated damages as to untimely contributions.

### i.   Liquidated Damages for Unpaid Contributions

As to plaintiffs' request to recover liquidated damages for unpaid contributions, in her second affidavit, Ms. Chambers states that defendant has failed to pay contributions that it owes plaintiffs for the months of April 2010 through September 2010 and summarily states that "due to untimely payment or non-payment of contributions, [defendant] was assessed a liquidated damages delinquency of  $20,116.00."[11]  (ECF No. 14, Ex. A ¶¶ 5-6.)  Ms. Chambers divides this figure into the total amounts of liquidated damages owed to each fund.  (ECF No. 14, Ex. A ¶ 6.)  In her third affidavit, Ms. Chambers states that her second affidavit "accurately reflect[s]" the amounts of liquidated damages due.  (ECF No. 22, Ex. B ¶ 6.)  In support of her testimony, Ms. Chambers attaches defendant's contribution reports for the months of April 2010 through September 2010 and the delinquency summaries.  (ECF No. 14, Exs. B, C.)  In plaintiffs' First Supplement, Mr. Wexler and Ms. Chambers both state that:  "When a report is submitted, but either no payment is made or the payment is untimely, the delinquent contribution amount, plus the resulting interest and liquidated damages are entered into a delinquency summary."  (ECF No. 14 ¶ 5 & Ex. A, Add. ¶ 4.)

ERISA authorizes an award of liquidated damages in an amount equal to the greater of:  (1) the accrued interest on the unpaid contributions; or (2) the amount "provided for under the

---

[11] As discussed further herein, see note 19 and accompanying text, this figure is one of the many inconsistencies in Ms. Chambers' affidavits.

[relevant multiemployer] plan," not to exceed twenty percent of the unpaid contributions. 29 U.S.C. § 1132(g)(2). Here, although plaintiffs have offered inconsistent theories as to the amount of liquidated damages they may recover under the CBA, [12] the undersigned finds that the well-pled allegations in plaintiffs' Complaint and the terms of the CBA establish that plaintiffs are entitled to collect liquidated damages for unpaid contributions "equal to 20 percent of the unpaid contributions for the first month for which the contribution is delinquent." (ECF No. 1 ¶ 12); (ECF No. 14, Ex D, Art. XIV). Using this rate of assessment, the undersigned is able to verify that plaintiffs' calculations of liquidated damages represent 20 percent of defendant's unpaid contributions for April 2010 through September 2010. Based upon these calculations, I find that Ms. Chambers' affidavits and the delinquency summaries establish that defendant owes four of the five funds[13] a total of $5367.79 in liquidated damages for unpaid contributions, as set forth in the table below: [14]

---

[12] According to the Complaint, plaintiffs are entitled to recover liquidated damages for unpaid contributions "in an amount equal to the greater of 20% of the contributions owed, or $50.00." (ECF No. 1 ¶ 12.) The record does not reflect the source of this proposed methodology. The CBA submitted in support of plaintiffs' Motion provides for "liquidated damages equal to 20 percent of the unpaid contributions for the first month for which the contribution is delinquent." (ECF No. 14, Ex D, Art. XIV.)

[13] Plaintiffs do not claim that any liquidated damages are owed to the Dues Fund. (ECF No. 22, Ex. C ¶¶ 5-6.)

[14] The undersigned notes that, for some of the months during the time period of April 2010 through September 2010, the delinquency summaries list an amount of liquidated damages due but do not list an amount of unpaid contributions. (ECF No. 14, Ex. C.) Ms. Chambers does not break down defendant's contribution delinquency by month. (Id., Ex. A.) As discussed further herein, the undersigned is unable to verify the accuracy of plaintiffs' calculations of liquidated damages for those months where plaintiffs have not offered any evidence as to the amounts of unpaid contributions. The table indicates the months during the time period of April 2010 through September 2010 for which the delinquency summaries do not provide a contribution amount owed, and, therefore, the months for which the undersigned is unable to verify the liquidated damages due, with an "X" symbol.

**Liquidated Damages for Unpaid Contributions**

| Month | Welfare Fund | Pension Fund | Apprenticeship Fund | Individual Account Fund |
|---|---|---|---|---|
| April 2010 | X | $207.40 | X | X |
| May 2010 | X | $641.60 | X | X |
| June 2010 | X | $930.60 | X | X |
| July 2010 | X | $766.00 | $6.02[15] | X |
| August 2010 | X | $951.80 | $104.70 | X |
| September 2010 | $1,164.00 | $537.00 | $59.07 | X |
| **TOTAL** | **$1,164.00** | **$4,034.40** | **$169.79** | **X** |
| **TOTAL FOR ALL FUNDS** | **$5367.79** | | | |

In sum, I find that plaintiffs have adequately established that they are entitled to collect $5367.79 in liquidated damages for unpaid contributions. Accordingly, I recommend granting, in part, plaintiffs' request to recover liquidated damages in the amount of $5367.79, which represents liquidated damages for unpaid contributions from April 2010 through September 2010.

---

[15] This $6.02 figure is lower than the $50.00 figure that plaintiffs list in the delinquency summaries for the apprenticeship fund for this same month. (ECF No. 14, Ex. C.) As discussed above, the terms of the CBA as to the assessment of liquidated damages are inconsistent with the terms of the CBA as pled in plaintiffs' Complaint. (ECF No. 1 ¶ 12); (ECF No. 14, Ex. D, Art. XIV). Because plaintiffs request a $50.00 figure, it appears that, in preparing their delinquency summaries, plaintiffs calculated liquidated damages according to the formula pled in their Complaint. (ECF No. 1 ¶ 12.) As discussed above, the CBA submitted by plaintiffs does not support that formula. According to the CBA, plaintiffs are entitled to collect liquidated damages for unpaid contributions equal to 20 percent of the unpaid contributions for the first month for which the contribution is delinquent. (ECF No. 14, Ex. D, Art. XIV.) Accordingly, the undersigned generated this $6.02 figure by calculating 20 percent of the $30.09 contribution that plaintiffs have established is owed to the Apprenticeship Fund for July 2010.

## ii.  Liquidated Damages for Untimely Contributions

As to plaintiffs' request to recover liquidated damages assessed for untimely contributions during the time period of January 2008 through March 2010 (ECF No. 22, Ex. C ¶¶ 2, 5), plaintiffs, despite multiple opportunities, have not provided the undersigned with the contribution amounts upon which the liquidated damages are based.  Accordingly, the undersigned concludes that plaintiffs have not presented sufficient evidence to establish the amounts of liquidated damages owed for untimely contributions.

Here, plaintiffs rely on the affidavits of Ms. Chambers and the delinquency summaries to support their request for a "total of $78,591.69 in liquidated damages."  (ECF No. 22 at 3 & Ex. C ¶ 5.)  In her second affidavit, Ms. Chambers asserts that defendant has failed to timely pay contributions "with respect to work performed during various months of January 2008 through March 2010" and summarily states that "due to untimely payment or non-payment of contributions, [defendant] was assessed a liquidated damages delinquency of $20,116.00." (ECF No. 14, Ex. A ¶¶ 4, 6.)  Ms. Chambers does not state the amounts of contributions that were owed during January 2008 through March 2010, or the months for which they were due. (Id.)  Nor do the delinquency summaries list these amounts.  (ECF No. 14, Ex. C.)  Plaintiffs have not presented any other evidence establishing these amounts.  In the absence of any evidence of the contribution amounts that were untimely paid during the time period of January 2008 through March 2010, or the months for which they were owing, the court is unable to verify the accuracy of plaintiffs' calculations of liquidated damages for untimely contributions.

Plaintiffs' failure to detail the untimely contribution amounts is compounded by the fact that, as plaintiffs note in their Second Supplement, plaintiffs have presented inconsistent evidence as to the amounts of liquidated damages due because there is a discrepancy between the

amounts listed in the delinquency summaries, totaling $78,591.69 (ECF No. 14, Ex. C), and the amounts listed by Ms. Chambers in her second affidavit, which total $20,116.00.  (ECF No. 14, Ex. A ¶ 6); (ECF No. 22 at 3).  Plaintiffs claim that this discrepancy "does not reflect anything more substantive" because it is the result of Ms. Chambers' drafting error,"[16] and plaintiffs "refer the court" to Ms. Chambers' third affidavit, in which they claim that Ms. Chambers outlines the details of her drafting error and provides a correct list of the amounts of liquidated damages owed to each fund.  (Id.)  In her third affidavit, however, Ms. Chambers notes that "[t]he amount of delinquent contributions, interest, and liquidated damages is accurately reflected in my second affidavit," and she does not provide an amended list of the amounts of liquidated damages due.[17] (Id., Ex. B ¶ 6.)  Ms. Chambers' inconsistent and conclusory affidavits are insufficient to establish the amounts of liquidated damages that plaintiffs seek to recover for untimely contributions.  Plaintiffs have not presented any other evidence supporting the amounts of liquidated damages that they request.

In Trs. of Operating Eng'rs Trust Fund, et al. v. Dominion Caisson Corp., 2010 WL 4781337, at *2, 5 (D. Md. Nov. 17, 2010), Chief Judge Chasanow ("Judge Chasanow") had similar difficulties in determining an appropriate damage award from an affidavit submitted by

---

[16] In her second affidavit, Ms. Chambers states that defendant owes plaintiffs a total of $20,116.00 in liquidated damages and sets forth the individual amounts of liquidated damages due to each fund.  (ECF No. 14, Ex. A ¶ 6.)  As plaintiffs note, the amounts listed by Ms. Chambers are different from the amounts listed in the delinquency summaries that Ms. Chambers attached to support her testimony, which total $78,591.69.  (Id., Ex. C); (ECF No. 22 at 3).  Plaintiffs claim that this discrepancy resulted because, in her second affidavit, Ms. Chambers incorrectly listed the amounts of liquidated damages that were incurred in the year 2010 instead of the total amount of liquidated damages incurred.  (ECF No. 22 at 3.)  As discussed herein, plaintiffs have not presented any evidence to support this contention.

[17] In addition, the only drafting error that Ms. Chambers addresses in her third affidavit is her failure to update her second affidavit to reflect the fact that defendant had provided plaintiff with its monthly contribution reports.  (Id., Ex. B.)

Ms. Chambers.  Id.  In that case, Judge Chasanow found that Ms. Chambers' affidavit was

insufficient to establish the amounts of liquidated damages and interest due for untimely

contributions because, in her affidavit, Ms. Chambers "merely asserted, in conclusory fashion,

the amounts she believe[d] [were] owed to plaintiffs," without demonstrating how she arrived at

the figures.  Id.  Judge Chasanow observed that "without knowing the amounts that were owed

and the number of days for which interest accrued, the court is unable to verify the accuracy of

plaintiffs' calculations as to [the months for which defendant untimely paid contributions]."  Id.

at *5.  Accordingly, Judge Chasanow awarded plaintiffs liquidated damages and interest only for

the months for which no contributions were paid because those were the only months for which

the court was able to verify plaintiffs' calculations.  Id.

Here, the undersigned provided plaintiffs with multiple opportunities to clarify their

request for damages.  After reviewing plaintiffs' initial Motion, in a letter order dated February

2, 2012 (ECF No. 10), the undersigned informed plaintiffs that they had not presented the

undersigned with sufficient evidence for the undersigned to assess whether the damages that

plaintiffs requested were appropriate.  (Id.)  In that letter, the undersigned raised multiple

concerns with plaintiffs' Motion, including:  (1) that plaintiffs had presented inconsistent

evidence as to the time period for which liquidated damages and interest were owed; (2) that

plaintiffs had not bifurcated whether the requested damages were for late payment or non-

payment of contributions; and (3) that plaintiffs had not explained how the amounts of liquidated

damages and interest that they requested were calculated.  (Id. at 2-3.)  Accordingly, the

undersigned directed plaintiffs to provide the court with evidence addressing these concerns.  (Id.

at 3.)  In response, plaintiffs submitted their First Supplement, in which Mr. Wexler and Ms.

Chambers both stated that:  "When a report is submitted, but either no payment is made or the

payment is untimely, the delinquent contribution amount, plus the resulting interest and liquidated damages are entered into a delinquency summary."  (ECF No. 14 ¶ 5 & Ex. A, Add. ¶ 4.)   After reviewing plaintiffs' First Supplement, the undersigned again noted, in a letter Order of March 30, 2012 (ECF No. 16), that plaintiffs had not presented sufficient evidence to support their request for damages because "the conclusory statements made by Mr. Wexler and Ms. Chambers …d[id] not correlate the figures listed in the delinquency summary with the damages that plaintiffs request[ed]."  (Id. at 2.)  Accordingly, the undersigned directed plaintiffs to provide the court with evidence as to how the amounts listed in the delinquency summary supported the amounts of damages listed in Ms. Chambers' second affidavit and advised plaintiffs that this was their "final opportunity to provide the undersigned with evidentiary support in this matter."  (Id. at 1-2.)  In response, plaintiffs submitted their Second Supplement, in which they stated that that defendant owes a total of $78,591.69 in liquidated damages "due to untimely payment or non-payment of contributions" and that this amount is "consistent with the delinquency summaries."  (ECF No. 22 at 3.)  Plaintiffs again did not detail the data they relied upon to support that conclusion.

In sum, despite affording plaintiffs multiple opportunities to clarify their request for liquidated damages, the undersigned is unable to verify plaintiffs' calculations as to the amounts of liquidated damages due for untimely contributions during January 2008 through March 2010 because plaintiffs have not established the contribution amounts upon which the liquidated damages are based.  Accordingly, I recommend denying plaintiffs' request to recover liquidated damages as to those assessed for defendant's untimely contributions.

In sum, I recommend only granting in part plaintiffs' request to recover liquidated damages, in the amount of $5367.79, for unpaid contributions for the time period of April 2010

18

through September 2010.

### 3. Interest

Plaintiffs also seek to recover interest in the amount of $5,546.87 assessed against defendant for unpaid contributions during April 2010 through September 2010 and for untimely contributions during January 2008 through March 2010.  (ECF No. 22, Ex. C ¶¶ 2-3, 6.)  For the reasons discussed below, the undersigned concludes that plaintiffs have not presented sufficient evidence to establish the amount of interest due for either unpaid contributions or for untimely contributions.

### i. Interest for Unpaid Contributions

Plaintiffs' claim as to interest assessed for unpaid contributions has two primary flaws: (1) plaintiffs have presented inconsistent evidence as to the rate at which interest may be assessed against defendant; and (2) plaintiffs have not explained the methodology used to calculate the requested amounts.  ERISA provides for an award of interest on unpaid contributions "determined by using the rate provided under the [relevant multiemployer] plan." 29 U.S.C. § 1132(g)(2).  In this case, however, plaintiffs have presented inconsistent evidence as to the interest rate the CBA prescribes.  According to the Complaint, if contributions are paid after the due date, under the terms of the CBA and Trust Agreements, defendant must:

> [P]ay to the Funds interest at the rate of 2% for the first 15 days of the delinquency, 2% for the next 15 days, and 2% per month or portion of a month thereafter, calculated from the due date through the date of payment.

(ECF No. 1 ¶ 12.)  The CBA that plaintiffs submit in support of their Motion, however, prescribes the assessment of interest at a rate of "eight percent (8%) per annum."  (ECF No. 14, Ex. D, Art. XIV.)  Plaintiffs do not explain this inconsistency.  In her second affidavit, Ms. Chambers states that "due to untimely payment or non-payment of contributions, defendant was

assessed an [i]nterest delinquency of $5,546.87." (ECF No. 14, Ex. A ¶ 7.) Although Ms. Chambers sets forth the individual amounts of interest due to each fund, she does not explain how plaintiffs calculated these amounts. (ECF No. 14, Ex. A ¶¶ 7.) The delinquency summaries list the amounts of interest due, but they do not detail how these amounts were generated or state the rate at which interest was assessed. (ECF No. 14, Ex. C.) Plaintiffs have not presented any other evidence establishing the rate at which interest may be assessed against defendant.[18] Nor have plaintiffs shown the methodology that plaintiffs used to calculate the amounts of interest that they request, despite being afforded multiple opportunities to do so. (ECF Nos. 10, 16.)

In sum, if plaintiffs had presented evidence establishing the rate at which interest could be assessed against defendant, the undersigned might have been able to verify the accuracy of plaintiffs' calculations as to interest assessed for unpaid contributions. See, e.g., Dominion Caisson Corp., 2010 WL 4781337, at *5 (awarding interest assessed for unpaid contributions in ERISA and LMRA default judgment action where plaintiffs established the amount of unpaid contributions as well as rate at which plaintiffs could recover interest). Here, however, plaintiffs have not established the rate that they used or explained the formula that they employed to calculate the requested amounts. Accordingly, the undersigned is unable to verify the accuracy of plaintiffs' calculations of interest assessed for unpaid contributions.

## ii. Interest for Untimely Contributions

As to plaintiffs' request to recover interest assessed for untimely contributions, plaintiffs have not established the amounts of contributions that were owed during the time period of January 2008 through March 2010 or the number of days for which these contributions were

---

[18] The undersigned attempted to determine what method plaintiffs employed but was unable to do so. It is not readily apparent that plaintiffs applied either the rate stated in the Complaint (which is not in the CBA offered by plaintiffs) or the rate noted in the CBA. (ECF No. 1 ¶ 12); (ECF No. 14, Ex. D, Art. XIV).

owing.  (ECF No. 14, Ex. A ¶¶ 4, 6.)  Ms. Chambers's affidavits do not address these amounts.

(ECF No. 14, Ex. A.)  Although, for some months during this time period, the delinquency

summaries list numbers in a column labeled "days over" (presumably the number of days a

contribution amount is overdue), they do not correlate these numbers with the actual amount of

an overdue contribution. (ECF No. 14, Ex. C.)  Plaintiffs have not presented any other evidence

establishing these amounts.  Without knowing the principal amounts that were owed and the

number of days for which interest accrued, the undersigned cannot verify the accuracy of

plaintiffs' calculations of interest assessed for untimely contributions during the months of

January 2008 through March 2010.  Dominion Caisson Corp., 2010 WL 4781337, at *5.

In sum, the undersigned is unable to verify plaintiffs' calculations of the amounts of

interest assessed for either unpaid contributions or for untimely contributions.  Accordingly, I

recommend denying plaintiffs' request to recover interest assessed against defendant for the

months of January 2008 through September 2010.

### C.  Other Relief

In addition to damages, plaintiffs seek attorneys' fees, costs, and injunctive relief.

### 1.  Attorneys' Fees and Costs

Plaintiffs request $2,601.50 in attorneys' fees and $441.40 in costs of suit, totaling

$3,042.90.  (ECF No. 22, Ex. C ¶ 8.)  Both the CBA and ERISA mandate an award of

"reasonable" attorneys' fees and costs.  29 U.S.C. § 1132(g)(2); (ECF No. 14, Ex. D, Art. XIV).

In order to properly determine an award of reasonable attorneys' fees, the court must calculate

the "lodestar amount" by multiplying the number of hours reasonably expended times a

reasonable hourly rate.  Blum v. Stenson, 465 U.S. 886, 888 (1984); Grissom v. Mills Corp., 549

F.3d 313, 320-21 (4th Cir. 2008).  The plaintiff must demonstrate that "the number of hours for

which [they] seek[] reimbursement is reasonable and does not include hours that are excessive, redundant, or otherwise unnecessary." Travis v. Prime Lending, et al. 2008 WL 2397330, at *4 (W.D. Va. June 12, 2008).

In support of their request for attorneys' fees and costs, plaintiffs submit the affidavit of Mr Wexler, an attorney with the law firm retained by plaintiffs in the instant action. (ECF No. 7, Ex. B.) Mr. Wexler states that the proposed lodestar calculation represents 12.1 hours of work performed in this case at an hourly rate of $215.00, and explains that the work performed included the following activities: preparing the complaint and related papers, communicating with the client and the process server, meeting with the client on a periodic basis, meeting with co-counsel to review correspondence from the court, and preparing the motion for default judgment and related materials. (Id. ¶¶ 2, 3.) I find that the time spent and hourly rate are reasonable and consistent with attorney fee awards in similar cases, and accordingly, recommend granting plaintiffs' request for $2,601.50 in attorneys' fees. See, e.g., Man-U Serv. Contract Trust Fund v. Teltara, Inc., 2011 WL 4596218, at *3 (D. Md. Sept. 30, 2011), report and recommendation adopted, 2011 WL 5007833 (D. Md. Oct. 18, 2011) (recommending court grant plaintiffs' request for $2,320.00 in attorneys' fees representing 11.6 hours of work performed at an hourly rate of $200.00).

Finally, I find that plaintiffs' litigation costs of $441.40 are reasonable and documented in the record (ECF No. 1); (ECF No. 7, Ex. B) and recommend granting this request. See Schedule of Fees, http://www.mdd.uscourts.gov/publications/Forms/ScheduleofFees.pdf (June 29, 2009) (cost of filing a civil action in this court is $350.00).

## 2.  **Injunctive Relief**

Finally, plaintiffs request that the court issue an injunction requiring defendant to:  (1) submit current and future reports in a timely manner, and (2) submit current and future contributions within 15 days.  (ECF No. 22, Ex. C ¶ 10.)  Plaintiffs also request that the court impose a prospective sanction for defendant's noncompliance with such an order.  (Id.)  ERISA provides for an award of "other legal or equitable relief as the court deems appropriate."  29 U.S.C. § 1132(g)(2).  Because the undersigned was unable to assess whether plaintiffs had established their right to permanent injunctive relief, the undersigned directed plaintiffs to provide the court with evidence in support of their request.  (ECF No. 10 at 3.)  Plaintiffs did not provide evidence supporting their request for an injunction in either their First or Second Supplement.  (ECF Nos. 14, 22.)  In her second affidavit, Ms. Chambers summarily states that "[defendant] has not paid to the funds any portion of the amounts set forth in this affidavit." (ECF No. 14, Ex. A ¶ 11.)  Mr. Wexler, in his affidavit, does not offer any detail as to plaintiffs' right to permanent injunctive relief.  (ECF Nos. 14, 22.)  Plaintiffs offer no other support for their request.  Accordingly, I find that plaintiffs have not established that their request for an injunction is appropriate and recommend denying their request.  Cf. Nat'l Elec. Benefit Fund v. AC-DC Elec., Inc., 2011 WL 6153022, at *3 (D. Md. Dec. 9, 2011) (finding plaintiff fund established prerequisites for an injunction pursuant to ERISA—irreparable harm and the absence of an adequate legal remedy—where plaintiff submitted a declaration from its counsel asserting that both of these prerequisites had been satisfied on facts of the case).

As to plaintiffs' request for a prospective sanction, Rule 54(c) of the Federal Rules of Civil Procedure provides that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."  Fed. R. Civ. P. 54(c).  When a complaint demands

a specific amount of damages, courts have generally held that a plaintiff is limited to entry of a default judgment in that amount.  In re Genesys Data Technologies, Inc., 204 F.3d 124, 132 (4th Cir. 2000).  Here, plaintiffs request that the court impose a "prospective fine in the amount of $100.00 per day" if defendant fails to comply with the court's order requiring it to timely submit current and future reports and contributions.  (ECF No. 22, Ex. C ¶ 10.)  In their Complaint, plaintiffs seek a specific amount of damages, but they do not request that the court impose a prospective penalty for defendant's future noncompliance. [19]  Accordingly, I recommend denying plaintiffs' request for a prospective sanction or fine.  See Dominion Cassion Corp., 2010 WL 1713999, at *4 (D. Md. Apr. 27, 2010) (declining to assess prospective fine of $100.00 per day against defendant as requested in plaintiffs' motion for default judgment because plaintiffs failed to request the imposition of a penalty amount accruing daily upon instances of further noncompliance in their Complaint).

## IV.  CONCLUSION

In sum, I recommend that:

1.  The court GRANT IN PART and DENY IN PART plaintiffs' Amended Motion for Entry of Default Judgment (ECF No. 22, Ex. C); and

2.  The court enter judgment in favor of plaintiffs in the amount of $40,517.05 consisting of an award for unpaid contributions in the amount of $32,106.36, liquidated damages in the amount of $5,367.79, attorneys' fees of $2,601.50, and $441.40 in costs of suit; and

3.  The court DENY all other requests for relief set forth in plaintiffs' Amended Motion.  (ECF No. 22, Ex. C.)

---

[19] As discussed above, in their Complaint, plaintiffs seek to recover either:  (A) the full amount of unpaid contributions, liquidated damages, and interest due, or (B) the full amounts that become due as a result of an audit performed prior to the entry of judgment.  (ECF No. 1 ¶ 15.)

I also direct the Clerk to mail a copy of this Report and Recommendation to defendant GDS Equipment Rental, Inc. at the address listed on plaintiffs' Complaint.  (ECF No. 1.)

Any objections to this Report and Recommendation must be served and filed within fourteen (14) days, pursuant to Fed. R. Civ. P. 72(b) and Local Rule 301.5.b.

Date:    6-29-12                             /s/
                                      Beth P. Gesner
                                      United States Magistrate Judge